(57 App. Div. 577.)

FRIES v. NEW YORK & H. R. CO. et al.

(Supreme Court, Appellate Division, First Department. February 8, 1901.)

1. DEEDS—RECORDING—BONA FIDE PURCHASER.

Edmond's St. p. 707, § 1, declared that every unrecorded conveyance should be void as against any subsequent purchaser in good faith and for a valuable consideration whose conveyance should be first recorded. *Held*, that where one conveyed land to a city, which had been laid out as a street, but the deed was not recorded, and subsequently, while the statute was in force, he conveyed a strip of land in the street to a railroad company, which recorded its deed, the railroad company acquired no title; it not appearing that it gave consideration for its deed, and it being shown that the company knew the land in question had been designated as a street, and had agreed in its contract with the city, made before its deed was given, to build its railroad subject to the rights of the city.

2. EASEMENTS—PRESCRIPTION.

Where a railroad company had a prescriptive right to carry its track in a cut in a street, with a parapet above the cut, it had no right to thereafter interfere with an abutting owner's easement of light and air by erecting a viaduct of greater height than the parapet.

3. SAME—DAMAGES—EVIDENCE.

Where a railroad company, having a prescriptive right to carry its tracks in a cut in a street, with a parapet above the cut, raised its tracks by placing them on a viaduct of greater height than the parapet, in a suit by an abutting owner to restrain the use of such viaduct, it was not error to admit evidence of the course of values in adjoining streets, though the street in question, when laid out, was intended to be subject to the rights of the railroad, whereas the other avenues had no such incumbrance.

Van Brunt, P. J., dissenting.

Appeal from special term, New York county.

Action by Gustav R. Fries against the New York & Harlem Railroad Company and another. From a judgment in favor of plaintiff, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

Ira A. Place, for appellants.
Joseph A. Flannery, for respondent.

RUMSEY, J. This appeal is taken from a judgment by which the defendants are restrained from interfering with the plaintiff's easement of light, air, and access to his premises, situated on the southwest corner of 129th street and Park avenue, in the city of New York, and fixing the amount of the fee and rental damages because of that interference; and the judgment is in the usual form in actions brought for the same purpose against elevated railroad companies. In view of the rule already laid down as to the nature and extent of the liability of the defendants, the only serious question presented here is as to the amount of the damages. In respect of that matter it may be said that if the learned justice below was correct in holding that the case is governed by the case of Lewis v. Railroad Co., 162 N. Y. 202, 56 N. E. 540, we think that his conclusion as to the amount of the rental damages and fee value is amply sustained by the evidence, so that the only question for consideration is whether the facts shown bring this case within that of Lewis. In the Lewis Case the

construction of the viaduct was substantially the same as in this. The defendant claimed to have acquired by adverse possession the right to maintain that structure in the street. There had been for many years a viaduct in front of the premises owned by Lewis, upon which the tracks of the defendants' railroad were laid. The court held that the railroad had acquired a title by prescription to maintain and use its viaduct to the extent of the user, but had no further right against the plaintiff than this user gave it. It is conceded that when this railroad was constructed, in 1831 or 1832, it consisted of one or two tracks laid upon the surface of what afterwards became 4th avenue. This construction existed until about 1874, when the grade of the railroad was changed, and the tracks were sunk in front of these premises so that after that time the railroad was in a cut 14 or 15 feet deep, and wide enough to contain four tracks, then laid; and on each side there was erected a parapet to keep people on the avenue above from falling into the cut. This was the situation until the present structure was erected under the provisions of an act passed by the legislature in 1892. This structure consists of a viaduct standing upon steel pillars, of which the outer row is built upon the line of the former parapet. They are 14 feet 4 inches high to the bottom of the structure, which is something over 7 feet in height, with tight sides. The original cut below was filled in, and the street paved over, so that the whole width of the street is passable, except so far as it is interfered with by the steel pillars. All these facts are not denied. The dispute between the parties arises from the fact that the plaintiff claimed that the defendants had no title to any of the land upon which its viaduct stands in front of his premises; that the only right they had was to build a railroad through the center of 4th avenue; that the right to occupy the street, so far as it interfered with the easements of light, air, and access of the abutting owners, was acquired by adverse possession against them, and such adverse possession was limited to the extent of their user during the time necessary to acquire a title by prescription. The defendants, on the contrary, claim that, as to the easterly half of the land upon which this viaduct stands, they had acquired a title in fee, subject only to the right of the city to lay out 4th avenue in pursuance of the map adopted under the statute of 1807, and that, having a title as against the plaintiff to the easterly half of the land upon which the viaduct was built, they were not trespassers as to that half, and therefore could not be chargeable for all the damages arising from the operation of the viaduct.

There is no dispute as to the facts which are claimed to show that the railroad company had title. Several years before 1825 the commissioners appointed by the act of 1807 to lay out the city of New York, in the upper part of Manhattan Island, had designated 4th avenue, which is now Park avenue, as a public street. The lots in question are situated on the west side of that street. In 1825 the land in front of the premises in question and the land on each side of 4th avenue was owned by one Charles Henry Hall, and in that year he conveyed to one Dexter the land on the west side of the street, as it was laid out upon the map. The avenue, although then laid out as

a public street, was not legally opened until after 1850. On the 16th of January, 1828, Hall and others conveyed to the mayor the land designated as 4th avenue on the map of 1807, between 125th and 129th streets, in front of the premises in question. That deed was not recorded. Dexter did not join in that conveyance. After it had been made, therefore, the situation was that Dexter owned the land which afterwards became 4th avenue, up to the center of the street on the west side, subject to its liability to be laid out as a street at the will of the city, and the city owned the fee to the land consisting of the remainder, as then laid out on the map, from the center of the street to the easterly line. On the 22d of December, 1831, an agreement was made between the city authorities and the New York & Harlem Railroad Company by which that company was given the right to lay its tracks through the center of the street as laid out on the map, provided that the width of the tracks should not exceed 24 feet. This right was given subject to the performance of certain conditions which were stated in the resolutions conferring it. On the 18th of January, after the company had entered into the contract with the city, Hall conveyed to it a piece of land 24 feet wide, running through the center of 4th avenue, between 127th and 135th streets, with the right to slope its embankments or excavations as much further as might be necessary to support the work,—not, however, beyond the lines of the avenue. The defendants claimed that by that deed they acquired the title in fee to the 24 feet in front of these premises, subject only to the right of the city, but without any liability to the abutting owners for the erection of any structure upon the land so conveyed. If at that time Hall had been the owner of the land thus conveyed, we may concede that the defendants' contention was well founded; but, as a matter of fact, Hall had before that time, as we have seen, devested himself of any title to the land composing 4th avenue. On the west side Dexter was the owner to the center of the street, and the city was the owner from the center to the east line of the street, so that Hall had no title to this 24 feet to convey to the railroad company.

But it may be said that as the deed to the city was never recorded, and the deed to the company was recorded in 1835, and as the company was in possession of the land and operating its railroad, the deed to the city was void as against the company. The law in force at that time with respect to the recording of conveyances is as follows:

"Every conveyance of real estate within this state hereafter made shall be recorded in the office of the clerk of the county where such real estate shall be situated, and every conveyance not so recorded shall be void as against any subsequent purchaser in good faith and for a valuable consideration, of the same real estate or any portion thereof, whose conveyance shall be first duly recorded." 1 Edmond's St. p. 707, § 1.

To entitle the subsequent purchaser to the benefit of this statute, it was necessary that he should prove not only that his conveyance was first recorded, but that he was a purchaser in good faith and for a valuable consideration. Westbrook v. Gleason, 79 N. Y. 23. Neither of these things appears in this case. It appears affirmatively that the railroad company knew that the land in question had been

designated upon a map as 4th avenue, and that the city intended to exercise control over it; and it had especially agreed in its contract with the city, made before this deed was given, to build its railroad subject to the rights of the city as expressed in that contract.   So that its officers must have known that the city had some sort of right in that land which it was insisting upon.   Neither did it appear that the railroad company was a purchaser for a valuable consideration. That is a subject for affirmative proof, and none was given upon that subject, and the deed does not show that there was any consideration given for it.   For these reasons the deed to the city was valid as against the railroad company, and it had no title to that part of the street in front of the plaintiff's premises, and its only rights, therefore, were those which it had acquired by adverse possession.   Within the rule laid down in the Case of Lewis against these defendants, cited above, that adverse possession did not give to the railroad company the right to carry its tracks, which for 20 years had run in a cut, upon a viaduct such as this is, above ground, in front of the plaintiff's premises.   The Case of Lewis applies fully to the one at bar.

The defendants object that there was an error in admitting evidence of the course of values in Madison and Lenox avenues.   It is settled that in cases of this nature, for the purpose of showing that the land of abutting owners upon neighboring streets which are not occupied by railroad tracks has increased more in value than the land of owners on such a street, the course of values upon the neighboring streets may be shown.   That was done in this case, but it was said that it was error in this case, because 4th avenue, when laid out, was intended to be subject to the rights of the railroad, which had already been constructed there and was in operation, whereas Madison and Lenox avenues had no such incumbrance.   That is true, and that fact would, clearly, very much affect the weight to be given the evidence; but we do not think that it was sufficient to render the evidence incompetent, even though it does take away from the weight to be given it.   As the evidence was not incompetent, the exception was not well taken.

We see no other question which needs examination, and upon the whole case we think that the judgment should be affirmed, with costs.

O'BRIEN, INGRAHAM, and HATCH, JJ., concur.

VAN BRUNT, P. J.   I dissent.   The admission of the evidence as to the course of values in Madison and Lenox avenues was error. Those avenues were entirely differently situated from 4th avenue, they not being subjected to any such servitude as existed of right thereon. Such being the case, the course of values upon Madison and Lenox avenues formed not the slightest basis for arriving at a judgment as to what the course of values on 4th avenue would have been had the character of the servitude not been changed.